IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM R. WEISS ENTERPRISES, INC. )<br>d/b/a TNT SALES, )<br>  )<br>   Plaintiff, )<br>  )<br>v. )<br>  )<br>Di-Mond Sales, Inc. )<br>  )<br>   Defendant. ) | Case No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff William R. Weiss Enterprises, Inc. d/b/a TNT Sales ("TNT"), for its Complaint against Defendant Di-Mond Sales, Inc. ("Di-Mond") alleges as follows:

## PARTIES

1. TNT is a Missouri corporation with its principal place of business located at 3131 Highway 100, Villa Ridge, MO 63089.

2. Di-Mond is a Canadian corporation incorporated in the Province of Ontario with its principal place of business located at 195 Constellation Drive, Stoney Creek, ON L8E 0J5.

## JURISDICTION AND VENUE

3. TNT's Complaint against Di-Mond arises out of the United Nations Convention on Contracts for the International Sale of Goods (the "CISG") and out of Missouri common law.

4. Article 1 of the CISG provides "This Convention applies to contracts of sale of goods between parties whose places of business are in different States: (a) when the States are Contracting States…"

5. The CISG governs TNT's breach of contract action against Di-Mond because TNT and Di-Mond contracted for the sale of goods, TNT's place of business is located in the United States, and Di-Mond's place of business is located in Canada.

6. The United States and Canada are both parties to the CISG.

7. This Court has jurisdiction over this action under 28 U.S.C. § 1331 because United States District Courts have original jurisdiction over all civil actions arising out of treaties of the United States.

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens of a foreign state.

9. This Court has jurisdiction over TNT's Missouri common law complaints under 28 U.S.C §1367 which provides that the United States District Courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to TNT's claims against Di-Mond occurred in this judicial district.

11. Examples of events or omissions giving rise to TNT's claims that have occurred in this judicial district include:

   a. Di-Mond conducted business with TNT in Franklin County, Missouri.

   b. The agreement which gives rise to TNT's breach of contract claim was negotiated and entered into in Franklin County, Missouri.

    c. Di-Mond committed a tortious act against TNT, the effects of which were felt by TNT in Franklin County, Missouri.

    d. TNT's principal place of business is located in Franklin County, Missouri, which is the most substantial nexus for the contractual dispute and fraudulent activity at issue.

    e. Di-Mond availed itself of this Court's jurisdiction by conducting substantial business in Franklin County, Missouri and entering into a contract with TNT in Franklin County, Missouri.

## FACTUAL BACKGROUND

12. TNT is a Missouri corporation engaged in the business of purchasing, selling, renting, and repairing commercial trailers and transportation vehicles.

13. Di-Mond is an Ontario corporation that designs and manufactures trailers, vans, and various other products for the transportation industry.

14. TNT desired to purchase numerous units of a particular model of commercial trailer referred to as a Maxx Van 53' Dry Freight Van Tandem on a wholesale basis so that TNT could sell the trailers to its network of customers.

15. Di-Mond manufactures this particular model of commercial trailer.

16. TNT contacted Di-Mond and the parties then negotiated the terms for purchasing a number of new trailer units that Di-Mond would manufacture for TNT.

## COUNT I – BREACH OF CONTRACT

17. TNT restates and incorporates by reference paragraphs 1 through 16 of this Complaint as if fully set forth herein.

18. On or about November 19, 2020 Di-Mond and TNT entered into a written contractual agreement (the "First Agreement") in which Di-Mond agreed to manufacture 55 units of the Maxx Van 53' Dry Freight Van Tandem and TNT agreed to purchase each of the 55 units manufactured by Di-Mond. A true and correct copy of the Agreement is attached hereto as **Exhibit 1** and incorporated herein by this reference.

19. TNT, a company with its principal place of business in the United States, contracted for the sale of goods with Di-Mond, with its principal place of business in Canada.

20. TNT purchased the trailers from Di-Mond on a wholesale basis so that they could be sold to TNT's customers.

21. The First Agreement provides that TNT shall pay $25,312.98 (U.S. Dollars) for each of the 55 units purchased, which totals $1,392,213.90.

22. The First Agreement further provides that Di-Mond shall build 15 of the units before December 25, 2020, and build the remaining 40 units by January 2021.

23. The First Agreement further provided that the units built in December of 2020 will be 2022 model years and the units built in January 2021 will be 2023 model years.

24. On or about November 19, 2020, Di-Mond provided TNT with a "Van Order Acknowledgment" that confirmed the terms of the First Agreement. A true and correct copy of Di-Mond's Van Order Acknowledgement is attached hereto as **Exhibit 2** and incorporated herein by this reference.

25. Di-Mond's Van Order Acknowledgment provided a work order number and confirmed the model type, quantity, and price of the units to be manufactured.

26.     The Van Order Acknowledgment further provided "SCHEDULED BUILD DATE: 15 BEFORE END OF YEAR" and "REQUESTED DELIVERY DATE: 40 TO BE BUILT IN JANUARY".

27.     Di-Mond did not meet the December 2020 and January 2021 manufacturing deadlines set forth in the First Agreement.

28.     On or about January 14, 2021, Di-Mond and TNT entered into a second written contractual agreement (the "Second Agreement") in which Di-Mond agreed to manufacture 5 additional units of the Maxx Van 53' Dry Freight Van Tandem and TNT agreed to purchase each of the additional 5 units manufactured by Di-Mond. A true and correct copy of the Second Agreement is attached hereto as **Exhibit 3** and incorporated here bin this reference.

29.     The Second Agreement provides that TNT shall pay $28,452.38 (U.S. Dollars) for each of the 5 additional units purchased, which totals $142,261.90.

30.     Under the First Agreement and the Second Agreement, TNT purchased a total of 60 trailer units to be manufactured by Di-Mond for a total price of $1,534,475.80

31.     Due to then-current market conditions and demand for this particular model of trailer, TNT stated that it wished to purchase an additional 100 trailer units from Di-Mond over the next three months.

32.     The First Agreement and the Second Agreement are collectively referred to herein as the "Agreement."

33.     Di-Mond did not provide TNT with 2023 model years as provided in the First Agreement.

34.     Di-Mond did not deliver the units based on the schedule established in the First Agreement, and did not timely notify TNT of the delays.

35. Di-Mond's failure to meet the manufacturing deadlines set forth in the First Agreement constitutes a breach of the Agreement.

36. TNT performed all of its obligations under the Agreement.

37. TNT was forced to send constant follow up communications to Di-Mond requesting status updates on the build schedule for the units ordered by TNT.

38. TNT had already sold the 60 units, had collected payment from from some of TNT's customers, and was relying upon Di-Mond's representation that the units would be manufactured and delivered in accordance with the deadlines imposed in the Agreement.

39. On or about February 17, 2021 Di-Mond notified TNT that Di-Mond had removed TNT's units from Di-Mond's promised build schedule and delayed the manufacturing and delivery date for TNT's units for up to 7 months beyond the deadline set forth in the Agreement.

40. When TNT representatives requested a reason for delaying the build schedule again, Di-Mond's CEO, Chris Di Lillo, stated that the delay was caused by Di-Mond's need to prioritize orders for delivery to other customers.

41. On or about March 25, 2021, Di-Mond notified TNT that it was not only delaying the build schedule again, but it was also unilaterally imposing a price increase of $2,000 on all trailers with production-built dates starting April 1, 2021 due to an increase in price for materials. Di-Mond's Price Increase Notice is attached hereto as **Exhibit 4** and incorporated herein by this reference.

42. As of April 1, 2021, Di-Mond had not manufactured 25 of the 60 units that TNT had purchased.

6

43. Per the terms of the First Agreement, Di-Mond was required to build all 55 units by January 2021; therefore, any increase in the cost of the materials in April of 2021 was caused by Di-Mond's failure to meet the required deadlines.

44. Di-Mond's attempt to increase the price charged to TNT due to circumstances caused solely by Di-Mond's failure to manufacture the purchased units on time constitutes a further breach of the Agreement.

45. TNT objected to Di-Mond's Notice of Price Increase, demanded that all trailers be built in accordance with the Agreement, and continued to inquire about the status of the severely delayed build schedules for the trailer units purchased by TNT.

46. On or about March 29, 2021, a representative of Di-Mond sent a build schedule that delayed the manufacturing of TNT's trailers until July and September of 2021 and stated that several orders had to be pushed to a later build date but she did not know the reason why.

47. TNT inquired about the reason for yet another delay, but no reason was provided.

48. On or about March 31, 2021, a representative of Di-Mond informed TNT that Di-Mond had canceled the work orders for 25 trailers that Di-Mond had not yet started manufacturing, but were previously scheduled to be manufactured in May of 2021.

49. TNT immediately informed Di-Mond that no orders had been canceled and demanded that Di-Mond continue to manufacture all units purchased under the Agreement.

50. On or about April 5, 2021, Di-Mond's CEO, Chris Di Lillo, responded to TNT's demands and represented that Di-Mond would still build the remaining 25 units, but they would be built after further delay.

51. On or about April 21, 2021, TNT asked for an update on the build schedule for these units.

52. On April 23, 2021, Di-Mond responded by stating it had canceled the work orders for the 25 units that were yet to be manufactured.

53. Despite TNT's insistence that this order had not been canceled, Di-Mond failed and refused to manufacture the remaining trailers purchased by TNT.

54. As of the filing of this Complaint, Di-Mond has still not delivered 25 of the 60 units purchased by TNT under the terms of the Agreement.

55. Di-Mond's failure to manufacture and deliver all 60 of the units purchased by TNT constitutes a further breach of the Agreement.

56. As a direct and proximate cause of Di-Mond's breach of the Agreement, TNT has been damaged in an amount exceeding $75,000.00 for units purchased by TNT but never delivered by Di-Mond.

57. As a direct and proximate result of Di-Mond's misrepresentations, TNT has suffered damage in the amount of the lost revenue for each customer contract for the sale of a trailer that was terminated.

58. Under Article 25 of the CISG, Di-Mond breached the contract between the parties by substantially depriving TNT of the goods TNT was entitled to expect under the Agreement.

59. Under Article 33 of the CISG, Di-Mond breached the Agreement by not delivering the goods by the date fixed by or determinable from the Agreement.

## **COUNT II – FRAUDULENT MISREPRESENTATION**

60. TNT restates and incorporates by reference paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61. Di-Mond represented to TNT that Di-Mond would manufacture 60 trailer units that TNT could purchase from Di-Mond.

8

Case: 4:21-cv-00967-MTS   Doc. #: 1   Filed: 08/03/21   Page: 9 of 13 PageID #: 9

62. Di-Mond represented to TNT that Di-Mond would manufacture 15 trailer units by December 25, 2020 and manufacture the remaining 40 trailer units in January of 2021.

63. Di-Mond represented to TNT that Di-Mond would manufacture 5 additional trailer units after the first order of 55 units.

64. Di-Mond failed to manufacture and deliver the trailer units ordered by TNT by the previously represented deadline of January 2021; therefore, Di-Mond's representations were false.

65. Delivery of all 60 trailer units to TNT by the manufacturing deadlines was material to TNT's agreement to purchase the units from Di-Mond because of TNT's stated intention to sell the trailers to its own customers.

66. Upon information and belief, at the time that these representations were made by Di-Mond in November of 2020 and again in January of 2021, Di-Mond knew these representations were false.

67. Di-Mond's knowledge that its representations were false is evidenced by the fact that Di-Mond pushed the manufacturing schedule for TNT's trailer units back as far as September of 2021.

68. The extreme discrepancy between Di-Mond's representations and the reality of its manufacturing schedule and constant delays demonstrates that Di-Mond had no intention of supplying TNT with all 60 trailer units by the deadlines that were represented.

69. Di-Mond intended that TNT would rely upon its representations and enticed TNT to do business with Di-Mond by making unrealistic assurances regarding Di-Mond's ability to quickly manufacture the trailer units in the quantity that TNT required.

9

70. TNT was unaware that Di-Mond's representations were false and trusted that Di-Mond was fully capable of supplying the trailers in accordance with the agreed upon terms of the parties.

71. TNT relied upon Di-Mond's representations that all 60 trailer units would be manufactured by the deadlines that were promised.

72. TNT's reliance upon Di-Mond's representations regarding the manufacturing completion dates is demonstrated by TNT's contracts with its own customers to sell the trailers it ordered from Di-Mond.

73. TNT had a right to rely upon Di-Mond's representations and TNT's reliance on Di-Mond's representations was reasonable under the circumstances because Di-Mond had superior knowledge of its own manufacturing capabilities.

74. As a direct and proximate result of Di-Mond's misrepresentations, TNT has suffered and continues to suffer irreparable damage to its reputation with its customers and other dealers in the industry.

75. Such damage to TNT's reputation with its customers and associates has and will continue to result in lost revenue to TNT.

76. Di-Mond's conduct was intentional and committed in reckless disregard of TNT's rights, such that the imposition of punitive damages is warranted.

## COUNT III – NEGLIGENT MISREPRESENTATION

77. TNT restates and incorporates by reference paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78. Di-Mond represented to TNT that Di-Mond would manufacture 15 trailer units for TNT by December 25, 2020 and manufacture the remaining 40 trailer units for TNT in January of 2021.

79. Di-Mond represented to TNT that Di-Mond would manufacture 5 additional trailer units after the first order of 55 units.

80. Di-Mond made these representations to TNT in the course of its business of manufacturing commercial trailers and because it sought to gain a monetary profit from TNT's purchase of the trailer units.

81. Di-Mond failed to exercise reasonable care and competence in representing to TNT that Di-Mond could manufacture all 60 trailer units by the promised completion dates.

82. Di-Mond's representation was false because the trailers ordered by TNT were not manufactured by the deadlines set forth in the Agreement.

83. The extreme discrepancy between Di-Mond's representations and the reality of its manufacturing schedule and constant delays demonstrates that Di-Mond should have known that it would be unable to supply TNT with all 60 trailer units by the promised completion dates.

84. Di-Mond negligently represented that it could complete all 60 trailer units by the agreed upon deadlines specifically to TNT in furtherance of its business transaction with TNT.

85. Di-Mond had a duty to negotiate in good faith with TNT and to inform TNT of any manufacturing problems or issues Di-Mond was aware of before TNT entered in to the Agreement.

86. TNT's reliance on Di-Mond's representations was reasonable under the circumstances because Di-Mond had superior knowledge of its own manufacturing capabilities.

87. As a direct and proximate result of Di-Mond's misrepresentations, TNT has suffered and continues to suffer irreparable damage to its reputation with its customers and other dealers in the industry.

88. Such damage to TNT's reputation with its customers and associates has and will continue to result in lost revenue to TNT.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff TNT Sales respectfully prays for the following relief:

1. Judgment be entered in TNT's favor on TNT's claims for Breach of Contract against Di-Mond;

2. An award of damages to TNT in the amount that is fair and reasonable against Di-Mond for its breach of its contract with TNT;

3. Judgment be entered in TNT's favor on TNT's claim for Fraudulent Misrepresentation against Di-Mond;

4. An award of damages to TNT in an amount that is fair and reasonable against Di-Mond for its fraudulent misrepresentation;

5. Judgment be entered in TNT's favor on TNT's claim for Negligent Misrepresentation against Di-Mond;

6. An award of damages to TNT in an amount that is fair and reasonable against Di-Mond for its negligent misrepresentation;

7. An award of additional damages that TNT continues to incur, as will be determined at the time of trial;

8. An award of punitive damages against Di-Mond for its reckless indifference to the rights of TNT;

      9.      An award of pre-judgment and post-judgment interest on all sums awarded to TNT;

and

      10.     Such further and other relief to TNT as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this case.

Respectfully submitted,

PAULE, CAMAZINE & BLUMENTHAL
*A Professional Corporation*

By: */s/ David M. Slaby*
David M. Slaby, #48035MO
Aaron L. Rankin, #68343MO
165 N. Meramec Ave., Suite 110
St. Louis, MO  63105-3772
Telephone: (314) 727-2266
Facsimile: (314) 727-2101
Email: dslaby@pcblawfirm.com
       arankin@pcblawfirm.com
*Attorneys for Plaintiff TNT Sales*